Good morning. Good morning. May it please the Court. My name is Elaine Eberhardt-Ermacki and I am representing the Meridian Joint School District No. 2 in this matter. There are several issues that have been presented to the Court in the briefing and the issue that I'd like to start with this morning deals with the issue of attorney fees. And the question that's the parents are entitled to an independent educational evaluation. Does that mean that these parents meet the statutory definition of being the prevailing party for the parent of a child with a disability? The standard of review for this Court is de novo with regard to this issue and this is the issue of first impression for this particular Court. Now there's a fee shifting standard under the Individuals with Disabilities Education Act, the IDEA, and that's at 20 U.S.C. 1415. And that particular standard has two prongs to it, not one, but two. And the two prongs consist of the parent being a prevailing party and the second prong being that the prevailing party then is the parent of a child with a disability. Let me ask you this. You know, I've spent a lot of time on this up to this point and this, I realize it's a first impression because I think what we have, the fifth and the sixth circuits or whatever in terms of that, that go the opposite way of the decision in this case, right? That's correct and also the third. Here's my understanding and I kind of want to just understand this, make sure that I'm dealing with the correct facts. If they, to get to the point where if they are the prevailing party and then, as you said, a child with a disability, is it discretionary still for the court to determine at that point whether they get attorney's fees? I believe it is, Your Honor. So even if they meet that criteria, it still is not, it's not a must or a mandatory standard, right? Correct. I mean, that's one thing. All right. Now, on the flip side, school districts can go against parents in the process, but they have to, it has to be frivolous for the school district to get money against parents, attorney's fees, right? Correct. All right. My concern, obviously from a, I think that, like if we take the Fifth Circuit, they say the language is unambiguous and so then we wouldn't look to necessarily the overall intent of the IDA or things along this line. Now, procedurally in this case, my understanding is that we have a young man that came from California. In California, he had been found eligible for, under the school district, and then he comes to Idaho, and so is he ever eligible in Idaho? Yes, Your Honor, he was eligible. Right. And then he burns his parents' house down, right? He starts a fire. Or whatever. So, and then he goes, he gets punished, and so he's in an institution, and then there's a report in the institution which is, comes into question about when he gets out of the institution, the parents request an IEE, correct? And the school district says, well, no, you had one in the institution, but the report in the institution said the parents may want to request one because an institution is a, is a different setting than the school. And then, but the school district denies an IEE and requests a due process hearing, right? Correct. And then the school district loses at the due process hearing. The hearing officer says you have to do an IEE, and then the school district appeals to the district court, right? Correct. And the district court says you have to do an IEE. And so, the school district lost at several junctures. And so, but the real thrust of it is that this kid has autism, right? No one's really disputing that. Never been disputed, Your Honor. So, it's the second prong of whether he qualifies under the IDEA. Correct. Correct. So, you would have us read the statute in a way that says that the parents can only recover, number one, they have to be a prevailing party. And essentially, but a prevailing party would only be at the end when the child is determined to qualify under both prongs, right? That is correct. So, I'm just wondering from the standpoint, since the statutes, I mean, it's not mandatory that the court give it at the end. The court can look to all of the circumstances. Doesn't the IDEA want this process to be one where it's participatory and that you don't want parents to be so afraid? I mean, obviously, the kids can't advocate for themselves. So, we would like to think that the school district is an advocate for the children and that the parents are an advocate for the children, but that we want both parties to be able to do what they have to do without a total fear of being paralyzed that they would be hit with $147,000 or that parents can't ask for something and if the school district gets, if the district court determined that they're just, they're hard-headed and the school district just continues to ask, you know, continues to protract this and will not do the IAE, that school districts can just do whatever they want and never have a fear that they'd be hit with attorney's fees, right? I mean, that's my sort of concern here, and I see where you're going in the sense that you're saying, okay, if we really think that, you know, if we really think that we shouldn't have to do an IAE, we need to be able to say that, and we have parents that want every service imaginable and their children don't qualify, and we are, you know, we have to make these determinations under the law, and we care about the kids and all of that, so we want to be able to make those decisions without being totally paralyzed, but in this situation, the school district, they went due process, they went to the district court, so at any point, and also the initial report, so a district court could look at it and say, hey, this school district's pretty bullheaded here, and I'm assuming maybe didn't have to award it, so is your best argument that the plain language just says that the student has to be qualified under the IDEA before someone can be a prevailing party? Yes, and it comes... But see, I'm telling you all my concerns in terms of, because this is a huge policy issue besides, but we have to do statutory construction, but there's a lot at stake here. There is a lot at stake, Your Honor, and that's one of the reasons I wanted to start with the attorney fee issue first, because even if this court were to find that the independent educational evaluation was appropriate, meaning that the evaluation done in the juvenile detention center was not appropriate, Meridian should not have adopted it. Now I also want to say Meridian adopted it, but also did additional observations by staff, and even though the issue is the setting, and obviously a juvenile detention center is going to be more restrictive than a high school with 1,700 students. Yeah, people behave better in a penal institution than they do when they're out to roam freely. What is incredible in this case is the student behaved phenomenally well, did phenomenally well. It's amazing how well this student did moving from a juvenile detention center where it was very restrictive to a high school with 1,700 students. Staff observed that. There were multiple meetings with regard to what staff observed and was shared with the parents, the parents' experts, and the staff determined that this student does not need additional support beyond a 504 plan, which... We don't write statutes. We have to deal with what Congress gives us. Sometimes they're different, but as I read 20 U.S.C. section 1415 and all of its subparts, it defines prevailing party as someone who wins, who has a child with a disability, and that is defined in the statute, not generally whether the child has a disability, but whether they've established it in the proceeding, and that's, I think, how this proceeding relates to the second case, is in the second case deals with the school receiving the IEE and saying, we don't think your child is entitled to a special educational program, right? That is correct. And that seems to be what the statute says. I mean, words are important, and it uses the word and, and in the second subpart, it says who by reason thereof needs special education and related services. Correct. So the question I have, and I'll repeat it for your opponents, is if we were to affirm the second case, that is to say that the hearing officer in the district court got it right on what, whether there was a need for an SES, how can we afford attorney's fees? And I take it your answer is, we can't. That's correct. And the, the, the Ninth Circuit has ruled on the issue of eligibility, and eligibility is the linchpin from which all other IDEA services and rights spring. And my colleague is correct, though, that the, the parents in this case, in the face of a school district that was resistant, it's kind of hard to understand why they would resist having an independent educational evaluation done in this circumstance, but indeed they did, and that went to hearing officer and then district court, and in the ordinary setting, you would say the parents at that point had prevailed, but then you have the statutory definition. You have the statutory definition, and if I could back up for just a minute, the evaluation that Meridian adopted was a very comprehensive evaluation. The record will establish that the parent asked for an evaluation to the Boise School District, because that's where the juvenile detention center was located. Boise did an evaluation. The parent didn't care for the outcome of that evaluation and asked for a due process hearing. The school district, the Boise School District, then negotiated with the parent, the parent's attorney, the treating psychologist for the young man while he was in the juvenile detention center, to do additional assessments. With regard to how he presented academics, IQ, the only area that they were unable to fully assess was the violence dealing with adaptive behaviors in that he was in a juvenile detention center. They had reasons to do it, but is all of that relevant to whether they're entitled to fees? No. Your Honor, you are correct. That is not relevant. That's relevant to the issue of were they entitled to an IEE, but in order to receive fees, not only do they need to be the prevailing party, they also have to meet the second prong, and be parents of a child with a disability, and that is the student has autism, but by reason thereof, has never been found in need of special education. That then takes us... Well, it's not that he's never been found, because he has been found. Correct. He was found. That's not, this is not, and it is a continuing, you deal with these kids from usually from kindergarten through when they graduate, well in this case, until they're in their twenties or whatever, but you deal with these children over, and they can qualify at certain points, and not qualify at certain points, and maybe have 504, right? Absolutely, and I misspoke. You're absolutely right. He did qualify early on. So it is a moving target. It is a moving target, but the target is moving forward, not backward, and when we look at the target moving forward, when I say he wasn't found eligible, he wasn't found eligible in the next, which will be the next case, the 426. So he has not been found eligible, and when we talk about eligibility, we look at, this is an initial evaluation, initial eligibility, because there was a period of time where he was found not eligible, 504 plan, and then we start all over again. Let me ask you this, though. If, all right, let's just assume that the school district was wrong about the IEE, and in order to really evaluate whether a student is entitled under the IDEA, you have to have good documents, okay? So what would be a person's remedy? Because maybe in this instance, an IEE didn't make a difference, okay, in terms of, but in some, it would. So how, you know, what's, how does a parent get the school district to do what they need to do, if they have no arrow in their quiver here? But they do have an arrow in their quiver, and that is, they can ask for the IEE, and then they move towards the eligibility, and the IEE, you're asking for the IEE. But here, this district wasn't going to do it. They went due process, they went district court, and everyone said, hey, you needed to do an IEE. That is correct. If, in your view, if the parents are not entitled to the fees in this proceeding, if they won the second part, would they then get the fees that are expended to get this proceeding? Or would somebody say, well, you, the statute of limitations is passed to ask for it? Well that issue is before this court, too. I'm asking about this, I know that. But. Sometime, sometime it might be. But the question is, my question is more specific. It's assuming we know they got the I, they won this part. Correct. You might say like an interim ruling, let's call it that for the moment. Is it your position that if they won the second part, if they were right about the second part, that is, if they did require the special ed, would they then be able to get their fees for this part, too? I believe the answer to that is yes. Because then they would be the prevailing parent, prevailing party, of a parent of a child with a disability under the definition. On the flip side of that, if they, if they won this part and lost the second part, does I think the answer to that would be no. I don't believe there's been any briefing or any, any assertions that the. Well, if you could show it was frivolous. If we could show it was frivolous. Which would be hard, since they won at the, on the due process at the IAE and the district court, it would be hard to say this was frivolous. I'm sorry, I didn't mean, I didn't mean it in that sense. I mean, having, having been awarded an interim fee, which is one way you could call this, would they get the interim, would the district get the interim fee back, because it turns out the district was essentially right. And the answer would be no, correct? I'm not sure if I understood your question, Your Honor. Well, you know, there are cases where district judges or courts will award interim fees to a person, and at the end of the case, the interim fee might have to be paid back, because ultimately the person was not prevailing. But nobody's making that contention anywhere here. No, Your Honor, no fees have been paid. There were, there was an award of interim fees, but no fees have been paid. Okay. If I may, I'd like to reserve the last three minutes. All right, thank you. Thank you. Good morning. Good morning. May it please the Court, my name is Frank LaForge, and I represent Matthew's parents, the respondents. I'd like to focus So we can say his name now? We can. Because he's an adult. Exactly. Okay. And it's hard to remember all these initials and all these IDEA cases. Okay. I'd like to focus my argument on two issues. First, whether Matthew's parents, who prevailed in an IDEA action brought by the school district, are entitled to fees under the IDEA's fee shifting provision in Section 1415. And second, the most appropriate limitations period to bring such an action. Has the Ninth Circuit ever interpreted whether the IDEA fee shifting provision allows a parent to recover fees where the child has been determined to not need SES? I believe this is an issue of first impression for this Court. And the only published and reported case is the Fifth Circuit case? Yes, Your Honor. It comes to the opposite conclusion. Yes, Your Honor. On the issue of the text, the plain meaning canon instructs us not to look at a provision in isolation, but we have to read that provision within the language and design of the statute as a whole. And here, Meridian's argument is based solely on this term, parent of a child with a disability, in the fees shifting provision. Well, it is, but the thing is, if it has to, he has autism, no two ways about that. No one's disputing that. But whether he's entitled to services under the IDEA is part of determining him to be disabled, right? There's more than one component. There is. So I think the question is whether the statute is ambiguous when it says disabled, right? The question, as I see it, is what the meaning of this term, parent of a child with a disability, means within Section 1415. And as we've outlined in our answer in brief, this term is used throughout Section 1415 in circumstances that necessarily include parents whose children haven't been determined eligible yet. Meridian doesn't seem to dispute this point. For example, subsection B1 of 1415 uses this term, parent of a child with a disability, and it gives such parents rights to attend meetings, examine records, and obtain an IEE with respect to the identification. Okay, so if we look at all of it and say it's ambiguous, then how can we tell from the intent of the entire statute that this is what Congress intended for parents to, you know, get money against school districts when your client really only won on the IEE? They lost at the end. I mean, we'll be talking about that in the next case, but... Well, our position isn't ambiguous because 1415 consistently uses this term to include parents whose children haven't been eligible yet. And so Meridian is essentially asking this court... In places other than the fee-shifting provision. Right. For example, like subsection B1. It uses that term in circumstances that necessarily include parents whose children have not yet been determined eligible. So is it your position that in the second case, if we affirm the district court, your client is still entitled to fees as a prevailing party? Absolutely, Your Honor. Explain how that works. Well, first of all, I'm aware of no authority for the proposition that a party isn't a prevailing fee or prevailing party in a case in which it prevails because it lost in some other case. And I would point this... Well, the other circuits, what you're asking us to do creates a split in the circuits. Right. And we better be right because I think this is an important enough issue that, I mean, every school is, and, you know, young people that are going to school and every school is dealing with this. So at some point I would hope that the Supreme Court was interested in telling us what that means because it's really important to the parents. It's really important to the schools. I would point this court to the First Circuit's decision in Mr. and Mrs. R, which we cite in our answering brief because it's procedurally similar to this case. Their parents brought a due process claim on a FAPE issue and achieved a stay put injunction. The school district, however, brought a separate action in federal court seeking a temporary injunction to undo that stay put. It failed. The First Circuit held that parents were entitled to fees even though they didn't achieve any change in the legal relationship because they successfully defended against the first action. But that doesn't help us on disability, interpreting the statutory language here. There is no other circuit that has held what you're asking us to do, right? There is the Bryan case out of this circuit. The other two cases have very little analysis. Both are unpublished and not even citable under the local rules from the circuits they originated. So I think we're dealing with Bryan here. Bryan didn't conduct a statutory analysis that went beyond the fee-shifting provision itself. It stopped there. In order to consider whether its interpretation would be consistent with other provisions in 1415 would frustrate the IDA's policies. In this regard, I think Bryan is inconsistent with this court's decision in the Hacienda case that we cite. There, this court addressed a very similar argument. A school district looked at 1415's references to a child with a disability and it argued that those references categorically exclude parents whose children have not yet been determined eligible from all of 1415's procedural safeguards, in particular the right to a due process hearing. So this court has addressed this textual issue, and Hacienda concluded that that language, particularly where it involves identification procedures, makes plain that that term doesn't serve a restrictive function. So you would have us read this fee-shifting provision as saying that a prevailing party is a child with a disability and a disability has two prongs. One, an actual disability. That's not in dispute here. And two, they can recover even though they do not need special education and related services. I would read it to apply to any parents who prevail in an IDA action, and that includes parents who merely suspect their child of having a suspected disability, and that's consistent with this court's decision in the Paseo Tiempo, which held that 1415's procedural safeguards become activated when the parents suspect a disability. So a school district receives an IEE and analyzes it and consults with their own experts and says to a parent, we don't think your child needs special educational services. They would still be entitled to fees under your argument. If they litigated the case, yes. And won. Yes. If a school district litigated the need for SES and won, you would still be entitled to fees. Exactly. That can't be right. Well, if they litigated the issue of the IEE, it's because the school district brought a due process hearing. That's not what the statute says. I'm sorry? That's not what the statute says. The statute says if you're a parent who prevails, who has a child with a disability, then they define it. Section little I is the disability. Again, that's not in dispute. Second section says who, by reason thereof, needs special education and related services. In the second case, the school district looked at the IEE and said, your child does not need SES. So if we were to affirm that in the second case, how can we award fees to your client? Again, because like the First Circuit and Mr. and Mrs. R, we prevailed in the action at hand. If parents had two choices, they could either accrue what turned out to be hundreds of thousand dollars in attorney's fees to defend what they proved to be meritorious claims in this case, or simply concede the issues to Murray in a default. Well, but I didn't, I, I guess what I, when I said that can't be right, I understood you to say if a parent just says my child's entitled to services and then they lose that even in that instance, they would be entitled to it. Well, this is where I think the court's discretion, the district court's discretion comes in. Every time they contest what the school district does and they lose, then they should be entitled to fees. I guess I'm a little confused at what hypothetical here, but here at least there's the fact of prevailing at the due process that you're, that you, they prevailed at the due process in the district court on the IE, but you were asked a hypothetical. If every time a parent just says, I think my child should have services and they can test it and lose that they would be entitled to fees. Oh, I'm sorry. I misunderstood the hypothetical. No, the parent has to prevail on something to obtain fees. Okay. But how little does it, you know, okay, this isn't the whole thing. So they prevailed on one. So how, how are you going to parse that out? Again, this is a matter of discretion for the district court. The district court is free to look at the, what relief the party saw and weigh it against the results they obtained and also balance it against the party's litigation conduct. Suppose in this case, the same hearing officer had heard both the IE issue and the SES issue. And in fact, heard them together. And at the end of the day said the, the parents are entitled to an IE, but they've not approved or established to me that this child needs SES. Would you still get fees? Yes, Your Honor. Well, I would say they, parents are fit within the definition of a prevailing party under the fee-shifting provision to seek fees under the district court's discretion. It's then in the district court's discretion whether to award any fees. And if so, what amount, considering that they may have only prevailed on a minor issue in a greater battle. In terms of policy . . . Counsel, can I ask you the question I asked you, opposing counsel? If they did not get fees, if the district court didn't award fees in the first phase, let's call it, in the second phase, would they be able to reach back and get the fees that were expended in the first phase? I'm not aware of any authority or that . . . One way or the other. That kind of clawback of attorney's fees, I've never heard that occurring. So in your view, if they don't get them now, even if they win on the second part, they never get them. Is that true? They never get them for the first part. I'm sorry, if we don't get them in this . . . If you don't get them here, but if you win on part number two, would you then be able to get what was expended here, getting through part number two? I would certainly hope so, because it would essentially moot Meridian's argument that Matthew's parents aren't eligible for attorney's fees because Matthew isn't eligible for special education. I'd like to go to policy for the fee-shifting provision, and the Haas-Unik case I referred to instructs us to review the IDEA's provisions in a manner so as not to frustrate the IDEA's core purposes. And this Court and the Supreme Court have identified such core purposes to include the identification of children with disabilities, as well as the need for adequate remedies for parents to be able to vindicate their rights under the IDEA. Here, the right to an IEE at public expense, which is statutorily provided, would be an empty one without the attorney's fee provision because it would be economically infeasible for parents to ever enforce that right. And I have a hypothetical to illustrate this. Imagine you have a pair of parents who are concerned that their child has a learning disability. But these parents don't know whether their child needs special education, or even if they want special education for their child. What they want is their child properly evaluated. Unfortunately, their school district provides a patently inadequate evaluation and refuses an IEE at public expense. Under Meridian's interpretation, it seems highly unlikely that these parents would spend five figures in an attorney's fees to vindicate that they can't recover, to vindicate their right to an IEE worth four figures. More likely, these parents would either essentially abdicate their statutory right to an IEE at public expense by obtaining the IEE out of their own expenses if they can afford it, or simply foregoing having their child properly evaluated. Well, I think what's more concerning is the parents that can't afford anything, all right? And so then you can't know what you don't know. But in this situation, we have the benefit of the whole thing playing out. And there's also the situation where parents can expect the school district to do everything. The school district is required to do what the law requires and is required to give FAPE and all of that, and it's set out what they have to do. But if the parents are wrong, then, you know, should the school district have to, you know, they can't exercise any judgment that they have to do everything that any parent says just so that they're totally bootstrapped to worry about that they're going to have to pay $147,000 or whatever. Well, the school district needs to decide whether it has an appropriate evaluation and whether the parents warrant an IEE. Apparently, though, if we just – I know we're looking at the full thing, but apparently they weren't without some support for their position because ultimately they won when the issue of the second prong was litigated, right? The IEE issue isn't about whether Matthew needs special education or not. It doesn't matter what the IEE even determines. It could have determined that he doesn't need special education. The question before the hearing officer was whether Meridian's evaluation was appropriate. In terms of – and I think when we're talking about the IDEA's identification procedures in the context of potentially eligible children, we can't easily divide those children into those who would be eligible and those who wouldn't because the fact is that all parents begin as parents of potentially eligible children. And if we withhold these kinds of procedural identification rights like IEEs, we are necessarily going to deprive many parents whose children would be eligible of the very procedures they need to prove that eligibility. Well, but if every parent came in and said, I just want an IEE, but of that, all of them aren't going to be – you know, I mean, the schools do have some expertise to see these kids every day. They have – I know that there are school psychologists. I know that they regularly have meetings and they do all of these things. So do you make a bad rule for the one time where the school district is being obdurate and stubborn? Well, if the school district is correct and its reliance on its evaluation is appropriate, then it won't be subject to attorney's fees. And, in fact, it could prove perhaps that the parents brought their suit frivolously or for improper purpose and recover its own attorney's fees. Again, and I'd also note that to the extent we're worried about parents potentially gaming the system, there is a substantial threshold obstacle to that, and that's the district court's discretion. The district court can – when a parent seeks fees, can weigh, again, the results obtained versus what was sought. And if it believed that the parents were simply trying to get attorney's fees on a marginal issue, it's free to withhold all fees. And if they brought it with an improper purpose or frivolously, it could award the school district its fees. Well, it's probably fairly clear here that the district court felt that the school district was fairly obdurate in just continuing on and not doing – continuing to say they're not going to do an IEE. But that's still – we still have to go back to our statutory construction, too. So your best argument, I'm understanding, is that it's ambiguous, that you have to look to other parts of the statute, and that we're bound by Hacienda, which supports but doesn't reach that conclusion. Hacienda didn't address the fee-shifting provision in particular. Right. And I'd also note, again, this court's decision in Pase Tiempo that parents who suspect their children of having a disability have the right to 1415's procedural safeguards. When an appellant says that the IEP is a lynchpin, that's not exactly correct. The Supreme Court in Rowley notes that the procedural component of the IDEA is just as important as the substantive side. And, again – and that's in part because you need those identification procedures to be available to parents for them to be able to prove that their children are eligible. So, yes, in sum, I think Meridian's restrictive reading of the attorney's fees provision is inconsistent with the way that term is used throughout 1415. I think it contradicts this court's Hacienda decision. I think it would frustrate the IDEA's purposes and core purposes and the identification of children as well as the necessity of having adequate remedies to be able for parents to vindicate their rights under the IDEA. If the court has no further questions, thank you. Thank you. Let me have a question that popped up in my mind after your opponent argued, and it's this. I take it when your client received the IEE, they did not simply say, we don't think there's a thing in the world wrong with your child. Send him to class. You want to come to our school, send him to class, and he can receive the same educational treatment in every respect that any other student receives. That didn't happen, did it? No, Your Honor, it did not. In fact, there's a written notice, and the eligibility report sets forth really a good roadmap for this court with regard to the facts and the meetings that did happen. Once he was released from the juvenile detention center, there began a series of meetings with the parent, the parent's attorney, parent, the treating psychologist, and I think there was a series of at least five meetings that occurred. The first meeting looking at 504, because he came in with a 504 plan. The next meeting looking at the eligibility report from the Boise School District, where the parties at the table concluded that Boise had done a very comprehensive evaluation. That included the treating psychologist for Matthew. The determination was, we need observations in the school setting, and that's exactly what staff did. So this sort of intro to the question I really want to ask is, the school district didn't do absolutely nothing. They received the IE, and they took steps, and they did things to accommodate the needs of this student, correct? Absolutely, Your Honor. Why doesn't that qualify under this fee-shifting statute as, quote, related services, close quote? Under the IDEA, Your Honor, in order to receive related services, a student must first qualify for special education. Does it say that in the fee-shifting statute? Yes, it does, because it talks about the definition of a child. Tell me where. Well, the definition for a child with a disability, Your Honor. Going back to that definition. It's got two parts. One part is you have to actually have a disability. That's not an issue. And the second part, too little I says who, by reason thereof, that's the disability, needs special education and related services. So my question is, why can't we construe what the school district did as, quote, related services, even though they didn't provide an SES? I'm not really sure, Your Honor, if I understand your question. Does and separate the two? Does the word and, is and conjunctive or disjunctive? I'm going to say when we look at related services, in the arena of the IDEA, the student must need specially designed instruction, need special education, before the student also can access related services under the IDEA. That's different than under Section 504. He was on a 504 plan, and under 504 a student can receive related services without the need for specially designed instruction. I'm not sure if that. You say and, and this phrase is conjunctive. Yeah. Okay, gotcha. Thank you, Your Honor. All right, thank you. This matter will stand submitted. The Court's just going to take a very brief recess for five minutes, and then we'll hear the last case on calendar. Thank you.
judges: Fernandez, Hawkins, Callahan